UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nathaniel McClure,

      Plaintiff,

v.                              Case No. 13-11289

Target Corporation,             Honorable Sean F. Cox

      Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a slip-and-fall case. Plaintiff Nathaniel McClure ("Plaintiff") alleges that he sustained injuries when he slipped and fell on grease at Defendant Target Corporation's ("Defendant" or "Target") store located in Farmington Hills, Michigan. Defendant maintains that there is no evidence that an unsafe condition existed, that it had no notice of the dangerous condition, and that the condition was open and obvious.

This matter is before the Court on Defendant's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. (Doc. #31). The motion has been fully briefed by the parties and the Court heard oral argument on December 11, 2014. For the reasons set forth below, the Court shall DENY Defendant's motion.

## BACKGROUND

On June 15, 2012, Plaintiff and his then-six-year-old son went to the Target store located in Farmington Hills, Michigan. (Pl. Stmt. at ¶ 1; Def. Stmt. at ¶ 1). Plaintiff and his son were accompanied by Plaintiff's friend, Chris Kagel ("Kagel"), and Kagel's eight-year-old son. (Pl. Dep.,

attached to Pl. Resp. at Ex. 1, p. 72).  Plaintiff, Kagel, and their children proceeded into the Food Avenue area of the Target store to eat.  (Pl. Dep. at 72).  Plaintiff and his son walked up to the food counter to place an order.  (Pl. Dep. at 76).

Plaintiff's movements and actions, beginning when he walked up to the food counter, are captured on a Target in-store surveillance video that has been produced.  (Surveillance Video, Def. Mo. at Ex. C).  The video shows that, while Plaintiff was standing at the food counter, his son walked over to the front of the soda machines, turned around to walk back toward the food counter, and slipped and fell about two feet away from the food counter.  (Def. Mo., Ex. C at 32:07).  At this moment, the Target employee who was serving Plaintiff is out of view of the camera.

About a minute later, Plaintiff walked away from the food counter toward the seating area with his items.  The video then shows Plaintiff walking to the soda machine, filling his drinks, and then turning around to go back to his table.  (Def. Ex. C at 32:50-33:20).  As Plaintiff stepped off of the carpeting in front of the soda machine to the tile floor, Plaintiff slipped and fell.  (Def. Ex. C at 33:20).  The video clearly shows Plaintiff's right leg slipping forward, and Plaintiff's left knee twisting out to the side in an undoubtedly painful fashion.  (*Id.*).  As a result of his fall, Plaintiff spilled the soda pop and the Icee frozen drink that he was holding.

Plaintiff claims that he fell on grease on the tile floor.  (Pl. Dep. at 89-92).  Plaintiff maintains that there was a "grease trail" coming from behind the food counter out into the dining room area, and that the greasy substance was clear.  (Pl. Dep. at 89-91; *see also* Plaintiff's Photos of Food Avenue area, attached to Pl. Resp. at Ex. 2).  At his deposition, Plaintiff was asked to provide further detail about the substance that caused his fall:

> Q:  Did you look at the part of the mat, of the floor that was just past the mat where you actually stepped and you fell? Did you ever look at that spot?

2

A:      Prior to me falling?

Q:      We'll take it prior.  Did you look at that spot prior to you falling?

A:      Yes.

Q:      And what did you see?

A:      The line.  Essentially the line that was coming out from behind the counter.

Q:      What line?

A:      The grease line.  Sorry.

Q:      How do you know it's grease?

A:      It's the greasy substance.  I don't know.  I didn't do any testing to it but...

Q:      Did you touch it?

A:      Yes.

. . .

Q:      When?

A:      After the accident on my way over to sit in the chair when they put me right by the entrance.

. . .

Q:      The video doesn't show you touching the floor, does it?

A:      Honestly I don't know if the video shows me touching the floor . . .

. . .

Q:      Go ahead.

A:      At that point I determined, that's where I immediately asked Chris to – hey, man, what happened?  Please help me figure this out.  I started looking around.  I could clearly see from my perspective, especially being on the floor, that there's this grease trail coming up from behind the counter as clear as day.

3

> And then I put, then I thought back to five minutes before when my
> son fell 5 feet from where I am and drew a line from where he fell to I fell, and then
> I drew a line from where I fell to he fell to the door, and sure enough, especially low
> to the ground, you can see a clear grease trail coming out of there**.**

(Pl. Dep. at 87-91).  Later on in his deposition, Plaintiff testified that he first saw the grease trail

after he fell:

> Q:   You're claiming that there was a trail of grease from behind the food counter
>
> over to where you fell?
>
> A:   Yes.
>
> Q:   And when did you first see that?
>
> A:   After I was on the floor.

(Pl. Dep. at 92).

Several Target employees were deposed in this case.  Chris Hall ("Hall"), a store facility

technician at the Farmington Hills, Michigan Target store, agreed with Plaintiff's counsel that "for

instance, with respect to the popcorn machine or hot dog machine, that grease or oil or whatever sort

of cooking substance is used can get dripped on the floor in the process of preparing food[.]"  (Dep.

of Christopher Hall, attached to Pl. Resp. at 26).  Hall also agreed that "if oil or cooking substances

fall on the floor, that they can get tracked out into the area where guests are eating food[.]" (Hall

Dep. at 27).

Rebecca Crouse ("Crouse"), the Target manager on duty at the time of Plaintiff's fall, was

also deposed.  Crouse agreed that Target employees "come out from behind, from the kitchen, and

walk into the service area . . . [.]" (Dep. of Rebecca Crouse, attached to Pl. Resp. at Ex. 4 p. 77).

Plaintiff claims that "Ms. Crouse agreed that grease and oil from preparing foods behind the counter

could have been tracked out into the dining area:"

4

Q:      Do you agree with me that oil used or a byproduct of the food prepped in the
        areas . . . could get tracked into the dining area where [Plaintiff] fell on the
        date of the incident?

        Mr. Willmarth:          I object. Calls for speculation.  Lack of foundation.

        By Mr. Economy:

Q:      Based on your personal knowledge, do you believe that that could have
        happened?

A:      I'm sure anything could happen.

(Crouse Dep. at 89).

Target's former Assets Protection Team Leader, Sherrie Young, was deposed.  She agreed

that oil, butter or grease could be tracked from the food prep area to the dining room:

Q:      All right. Based on your testimony earlier, that any sort of oily or buttery or
        greasy substance that would fall on those mats is probably not absorbed.
        If they're walking out into that area, you would agree with me that that
        substance could get tracked out into the dining area, correct?

A:      It could.

 . . .

Q:      When you – you helped clean up – you cleaned up the soda pop and the
        ICEE in this case, right?

A:      Yes, I did.

Q:      Was there any grease on the floor?

A:      No.

(Dep. of Sherrie Young, attached to Pl. Resp. at Ex. 5 p. 21, 26).

Target Team Member Kanae Cunningham ("Cunningham") completed a Team Member

Witness Statement after Plaintiff fell.  (Cunningham Statement, attached to Def. Mo. at Ex. E).

Cunningham stated that she "was just cleaning the area prior to [Plaintiff's] arrival.  The floor was

5

dry." (Def. Ex. E).

Defendant "does not concede there was grease on the floor." (Def. Mo. at 12). Defendant argues that Plaintiff's theory involving the grease trail "is only his own surmise, and not based on anything he actually knew." (Def. Mo. at 13).

Plaintiff filed his complaint on March 25, 2013 in this Court. (Doc. #1). Plaintiff alleges what appears to be essentially one count of premises liability against Defendant. (Doc. #1).

Defendant filed its Motion for Summary Judgment on September 18, 2014. (Doc. #31). Plaintiff responded (Doc. #36) and Defendant replied. (Doc. #39). On October 3, 2014, this case was reassigned to this Court from Judge Julian Abele Cook upon his retirement.

## STANDARD OF DECISION

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), *quoting* FED. R. CIV. P. 56(c).

"The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993). "The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The plaintiff must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The court must view the evidence, all

6

facts, and any inferences that may permissibly be drawn from the facts in the light most favorable

to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims in

this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012); *Schare v.*

*Mortgage Electronic Registration Systems, Inc.*, 2012 WL 2031958 at *2 (E.D. Mich. 2012).

In Michigan, premises liability flows from the ownership, possession, or control of the land

at issue. *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005). To succeed in a premises liability

action, a plaintiff must prove: 1) that the defendant owed the plaintiff a duty; 2) that the defendant

breached that duty; 3) that the defendant's breach caused the plaintiff's harm, and 4) that the plaintiff

suffered damages. *Hunley v. DuPont Automotive*, 341 F.3d 491, 496 (6th Cir. 2003).

For the purposes of premises liability, the landowner's duty depends on the status of the

injured party. *Taylor v. Laban*, 241 Mich.App. 449, 425, 616 N.W.2d 229 (2000), citing *Doran v.*

*Combs*, 135 Mich.App. 492, 495, 354 N.W.2d 804 (1984). Michigan utilizes three categories:

invitees, licensees, and trespassers. *Kessler*, 448 F.3d at 336-37. An invitee is an individual who

enters the land of another for a commercial purpose. *Cote v. Lowe's Home Ctr., Inc.*, 896 F. Supp.

2d 637, 644 (E.D. Mich. 2012).

The parties agree that Plaintiff was an invitee on Target's premises on the day he fell. A

storekeeper, like Target, has a duty to keep its premises reasonably safe for customers' use. *Serinto*

*v. Borman Food Stores*, 380 Mich. 637, 640-41 (1968). The storekeeper-landowner must also warn

the invitee of any known dangers existing on the premises. *James*, 626 N.W.2d at 162-63, citing

*Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596-597 (2000).

7

To prevail against a storekeeper for negligent premises maintenance or failure to warn, a plaintiff must show that the storekeeper either caused the dangerous condition or had actual or constructive knowledge of its existence. *Serinto*, 380 Mich. at 640-41. Absent concrete proof, knowledge can be inferred if the condition was of such a character, or existed for a period of time, such that the storekeeper should have discovered it in the exercise of reasonable care. *Id*; see also *Kroll v. Katz,* 374 Mich. 364, 372 (1965).

**A.      Is There A Genuine Issue Of Material Fact As To Whether Defendant Created The Grease Trail, Or Had Actual Or Constructive Notice Of The Grease Trail?**

Defendant argues that summary judgment in its favor is proper because "no evidence exists that Target created or was aware of any problem with the floor in the area where plaintiff was before the accident." (Def. Mo. at 13). Defendant maintains that "Plaintiff has no evidence as to how the supposed grease upon which he says she [sic] slipped came to be on the floor, only a supposition of how it came to be there." (Def. Mo. at 13).

Plaintiff admits that he did not personally observe anyone spill grease on the date of the incident. (Pl. Stmt. at ¶ 4; Def. Stmt. at ¶ 4). Nevertheless, Plaintiff appears to be arguing that Target employees created the grease trail and, therefore, notice is inferred. Plaintiff claims that Target's Food Avenue serves greasy foods such as pizza, popcorn and hot dogs, and that Target employees track grease through the dining room when they walk out from behind the food preparation area. (Pl. Resp. at 11-12; *see* Photos of Food Avenue; Pl. Resp. at Ex. 2). Because of the discrepancy in Plaintiff's deposition testimony, it is unclear whether Plaintiff first saw the grease trail before or after he fell.

As previously mentioned, in order for Plaintiff to prevail against Defendant for negligent premises maintenance or failure to warn, he must show that Target caused the dangerous condition

8

or had actual or constructive knowledge of its existence. *Serinto*, 380 Mich. at 640-41. Where "there is no evidence that the defendant caused or actually knew of the unsafe condition, the plaintiff may show constructive notice by demonstrating 'that the unsafe condition ha[d] existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it.'" *Minni v. Emro Marketing Co.*, 1997 WL 359073 at *1 (6th Cir. 1997) (quoting *Whitmore v. Sears Roebuck & Co.*, 279 N.W.2d 318, 321 (Mich. Ct. App. 1979)). "Such a showing requires evidence that the condition had existed for a 'considerable time.'" *Id.* The mere fact of an accident, standing alone, is insufficient. *Id.* "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Jackson v. Target Corporation*, Slip Copy, 2013 WL 3771354 at *5 (E.D. Mich 2013), citing *Banks v. Exxon Mobil Corp*, 477 Mich. 983, 984 (2007).

Plaintiff has no evidence indicating that any Target employee actually spilled grease anywhere on the floor on the day he fell. Likewise, Plaintiff has no evidence that grease was moved from the food prep area into the dining room on the bottom of Target employees' shoes—only that grease could have been transported that way. Plaintiff's only evidence that grease was actually on the floor is his own testimony that he saw the grease trail coming from the food prep area.

When viewing the evidence in the light most favorable to Plaintiff, and drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has established a genuine issue of material fact as to whether Target created the hazardous condition.

The Court further finds that there is a genuine issue of material fact as to whether Target employees tracked grease from the food prep area into the dining room. Plaintiff postulates that grease probably falls onto the floor in the food preparation area, which several Target employees

agreed is possible.  Plaintiff further argues that Target employees can track grease from the food

preparation area into the dining area, which several Target employees agreed is possible.  The Court

finds that if Plaintiff's testimony is believed, and a jury finds that a grease trail did indeed cause his

fall, then a rational jury may also infer that the grease trail was caused by Target employees walking

to and from the food prep area through the dining room based on the evidence presented.

**B.     Is There A Genuine Issue Of Material Fact As To Whether The Grease Trail Was Open And Obvious?**

Defendant does not concede that there was a grease trail on the floor.  Defendant argues,

however, that if there *was* a grease trail that caused Plaintiff's slip-and-fall, that it was open and

obvious. Therefore, Defendant argues, Defendant owed Plaintiff no duty to protect him from, or

warn him of, the hazard.  Plaintiff responds that the grease trail was not open and obvious because

Plaintiff did not see it until after he fell.

The open and obvious doctrine is "an integral part of the definition of [the] duty that an

invitor owes to its invitee." *Matteson v. Northwest Airlines, Inc.*, 495 Fed. App'x 689, 691 (6th Cir.

2012) (internal quotations and citation omitted).  "In general, a premises possessor owes a duty to

an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused

by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001).

A premises owner, however, owes no duty to protect a business invitee from or to warn of "open and

obvious" dangers. *Matteson*, 495 Fed. App'x at 691 (quoting *Lugo*, 464 Mich. at 516).  "Put simply,

[the open and obvious doctrine] means that an invitor has no duty to protect its invitee from an open

and obvious danger, unless that danger has special aspects that make it particularly likely to cause

harm." *Id.*

A hazard is open and obvious if "an average user with ordinary intelligence [would] have

10

been able to discover the danger and the risk presented upon casual inspection." *Id.* The Court should consider whether "it is reasonable to expect that the invitee would discover the danger[.]" *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475 (1993). "If reasonable minds could differ on the question of whether a condition is open and obvious, the decision must be left to the jury." *Mousa v. WalMart Stores E., L.P.*, 2013 WL 5352949, at *5 (E.D. Mich. 2013) citing *Vella v. Hyatt Corp.*, 166 F. Supp. 2d 1193, 1198 (E.D. Mich. 2001).

The Court finds that there are genuine issues of material fact as to whether the alleged grease trail on the Target floor was an open and obvious hazard. The video surveillance tape shows no visible grease trail or other substance that is noticeable "upon casual inspection." Additionally, as Defendant points out, several other patrons traversed the Food Avenue area with no difficulty. Moreover, it is unclear whether Plaintiff saw the grease trail before he fell. Based on the evidence presented, viewed in a light most favorable to Plaintiff, it is not unreasonable to conclude that Plaintiff would not have noticed the grease on the floor until after he fell. Because the Court finds that there is a genuine issue of material fact as to whether the grease trail was open and obvious, the Court shall DENY Defendant's Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, the Court shall DENY Defendant's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. (Doc. #31).

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: December 17, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager